UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,                                            Criminal No. 3:17-cr-00158-01

vs.                                                    HON. BERNARD A. FRIEDMAN

ANTHONY HAYNES,

    Defendant.
_____/

**OPINION AND ORDER DENYING
DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE**

This matter is presently before the Court on defendant's motion for compassionate release [docket entry 262]. Plaintiff has responded and defendant has replied. The Court shall decide this motion without a hearing. For the reasons stated below, the Court shall deny the motion.

Defendant, an inmate at FCI Gilmer in Glenville, West Virginia, seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A)[1] due to the prevalence of the

---

[1] Section 3582(c) states in relevant part:

> Modification of an Imposed Term of Imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of

coronavirus within FCI Gilmer and the alleged lack of precautionary measures. Defendant indicates that he has a number of medical conditions ("sleep apnea - respiratory condition, . . . Type 2 diabetes mellitus, obesity, essential hypertension") that increase his risk of severe illness if he were to contract the virus. He also states that he wishes to be reunited with his family. The government opposes the motion on the grounds that defendant has not submitted documentation showing that he suffers from these medical conditions, vaccines will soon be made available to inmates at all Bureau of Prisons ("BOP") facilities, and that defendant's release would be inconsistent with the sentencing factors listed in 18 U.S.C. § 3553(a).

The Sixth Circuit has recently clarified "how district courts, following the enactment of the First Step Act, should analyze defendant-filed motions seeking release under § 3582(c)(1)(A)." *United States v. Hampton*, No. 20-3649, 2021 WL 164831, at *1 (6th Cir. Jan. 19, 2021). Specifically,

> [i]n resolving those motions, district courts now face two questions: (1) whether extraordinary and compelling circumstances merit a sentence reduction; and (2) whether the applicable § 3553(a) factors warrant such a reduction. A third consideration, the § 1B1.13 policy statement, is no longer a requirement courts must address in ruling on defendant-filed motions.

*Id.* (citations omitted).

The Court has considered these factors and concludes that compassionate release

---

> probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i)  extraordinary and compelling reasons warrant such a reduction . . . .

2

would not be appropriate in this case. First, defendant has submitted scant evidence of his health conditions. The one-page BOP medical record defendant has attached to his most recent filing [docket entry 273] verifies that he suffers from obesity and type 2 diabetes, but there is no mention of the other medical conditions he claims to have ("sleep apnea - respiratory condition" or "essential hypertension"). The Centers for Disease Control recognizes obesity (body mass index over 30) and type 2 diabetes as conditions that increase the risk of severe illness from the virus. *See* https://www.cdc.gov/coronavirus/2019 (last visited Jan. 27, 2021).

Nonetheless, defendant has not shown that the existence of the virus, combined with his medical conditions, constitute an extraordinary and compelling circumstance warranting release, as it is not apparent that the risk of infection at FCI Gilmer is unacceptably high. The BOP has acted to reduce the population of its facilities by releasing thousands of inmates to home confinement – 18,112 as of December 2020, according to Department of Justice records. *See* https://www.justice.gov/olc/file/1355886. The Sixth Circuit has acknowledged these and other efforts by the BOP to reduce the spread of the virus. *See Wilson v. Williams*, 961 F.3d 829, 841 (6th Cir. 2020). Further, BOP records indicate that at the moment only ten inmates (and twenty-nine staff) are infected with the virus at FCI Gilmer. *See* https://www.bop.gov/coronavirus (last visited Jan. 27, 2021). In light of these circumstances, defendant has not shown that the BOP's efforts to combat the spread of the virus are inadequate or that FCI Gilmer would be unable to adequately treat him if he became ill.

This Court has stated that "[a] generalized risk of contracting COVID-19, or potentially developing the more severe symptoms associated with it, are not the type of 'extraordinary and compelling reasons' that justify compassionate release." *United States v.*

*Gordon*, No. CR 11-20752, 2020 WL 4381948, at *4 (E.D. Mich. July 31, 2020). *See also United States v. Shah*, No. 16-20457, 2020 WL 1934930, at *2 (E.D. Mich. Apr. 22, 2020) ("[S]peculation as to whether COVID-19 will spread through Defendant's detention facility, . . . whether Defendant will contract COVID-19, and whether he will develop serious complications does not justify the extreme remedy of compassionate release."). Defendant has shown no more than a generalized risk, not a risk that is specific to him based on his living circumstances and medical conditions.

The Court concludes that defendant has failed to show the existence of any extraordinary and compelling reason warranting his immediate release from prison. The Court also finds that release in this case would be inappropriate in light of the fact that defendant has served so little of his sentence. The Court sentenced defendant in July 2019, just eighteen months ago, to life imprisonment. The Sixth Circuit has noted that a defendant's failure to serve a significant portion of his sentence is something the Court may consider in deciding a motion for compassionate release, as it relates to the 18 U.S.C. § 3553(a) factors of reflecting the seriousness of the offense, promoting respect for the law, and providing just punishment for the offense. *See United States v. Kincaid*, 805 F. App'x 394, 395 (6th Cir. 2020). In the present case, the Court finds that releasing defendant after he has served only eighteen months of his life sentence would undermine each of these important sentencing objectives.

More importantly, releasing defendant would endanger the community. "Haynes was charged with conspiracy to sex traffic children, 18 U.S.C. § 1594(c); sex trafficking of children, 18 U.S.C. § 1591(a)(1), (b)(2), and (c); sexual exploitation of children, 18 U.S.C. § 2251(a) and (e); and obstruction of a sex-trafficking investigation, 18 U.S.C. § 1591(d)." *United*

4

*States v. Jenkins*, 821 F. App'x 504, 506 (6th Cir. 2020). A jury convicted him on all counts, the Court sentenced him to life in prison, and the court of appeals affirmed. The court of appeals summarized the facts of the case as follows:

> Anthony Haynes was the pastor at the Greater Life Christian Center in Toledo, Ohio. In 2014, a Greater Life congregant told Haynes that her 14-year-old daughter, T.T., had been sexually abused as a child. One Sunday, upon hearing the news of T.T.'s traumatic past, Haynes called T.T. in front of the whole congregation. Haynes vowed to protect T.T. and not let anything harm her. Shortly thereafter, T.T. moved into Haynes' home and started calling him "Dad."
>
> Within weeks, Haynes started sexually abusing T.T. While in his office at the church, Haynes pressured T.T. into having sex with his stepdaughter while he recorded it on his phone, aroused himself, and made sexual remarks. Not long after, when T.T. was still 14, Haynes himself had sex with her, again at his church. T.T. testified that she felt manipulated. After that first occurrence, Haynes started having sex with T.T. more frequently, as often as multiple times a week, occasionally recording it on his cell phone. This continued for years, even after T.T. moved out of Haynes' residence.
>
> Haynes would also condition giving T.T. time, money, and support on her having sex with him. T.T. testified that, on days when Haynes had sex with her, he would spend time with her and give her money for things she needed. In contrast, on days when they did not have sex, Haynes was not supportive; he would barely even answer his phone.
>
> Haynes also arranged for other pastors to have sex with T.T. One was Kenneth Butler, who testified that Haynes called him one day, picked him up, and brought him to Haynes' church, where the two of them had sex with T.T. Butler knew T.T. was a minor. And yet he had sex with her on that first day when Haynes called him and several other times after that, both with and without Haynes' involvement.
>
> The other was Cordell Jenkins, the other appellant in this case. Jenkins was the pastor at Abundant Life Ministries in Toledo. By the time Jenkins met her, T.T. had moved out of Haynes' house to

5

> live with her new guardian, Nikki Guyton. T.T. met Jenkins through the church, where Guyton attended. Haynes encouraged T.T. to send him explicit photos of herself that he would then pass along to Jenkins, insisting that Jenkins had a lot of money. Haynes would then tell T.T. about Jenkins' sexual remarks upon seeing the photos.
>
> Beginning in December 2016, Jenkins started communicating with T.T. through text messages. Their conversations were often sexual in nature, including Jenkins asking for sex and for sexually explicit photos of T.T. Jenkins also had sex with T.T. on multiple occasions over the course of several months. He also asked T.T. to *506 find a friend so they could have a threesome. T.T. and her friend, J.M., also a minor, were taken by Jenkins to a motel, where they all had sex. He would also give T.T. money after they had sex.
>
> Then one day in March 2017, T.T. was in trouble at home for staying out over the weekend, leading Guyton (T.T.'s guardian at the time) to take T.T.'s cell phone. Guyton discovered sexually explicit text messages on the phone, which set in motion a chain of events that led to the arrest and indictment of both Haynes and Jenkins.

*Id.* at 505-06. Based on the facts of this case, defendant could not be released without seriously endangering the community. This alone disqualifies defendant from consideration for compassionate release. *See United States v. Ruffin*, 978 F.3d 1000, 1005 (6th Cir. 2020). Accordingly,

IT IS ORDERED that defendant's motion for compassionate release is denied.

Dated: January 28, 2021  S/ BERNARD A. FRIEDMAN
    Detroit, Michigan  SENIOR UNITED STATES DISTRICT JUDGE
      SITTING BY SPECIAL DESIGNATION